UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DONALD U. SCOTT,

                     Plaintiff,          Civil Action No. 16-14213
                                      Honorable Victoria A. Roberts
                                      Magistrate Judge David R. Grand

v.

COMMISSIONER OF
SOCIAL SECURITY,

                     Defendant.
_____/

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [14, 16]**

Plaintiff Donald Scott ("Scott") brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions [14, 16], which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

**I.     RECOMMENDATION**

For the reasons set forth below, the Court finds that substantial evidence supports the Administrative Law Judge's ("ALJ") conclusion that Scott is not disabled under the Act. Accordingly, the Court recommends that the Commissioner's Motion for Summary Judgment [16] be GRANTED, Scott's Motion for Summary Judgment [14] be DENIED, and that, pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision be AFFIRMED.

## II. REPORT

### A. Procedural History

On February 19, 2014, Scott filed applications for DIB and SSI, alleging disability as of November 16, 2012. (Tr. 176-90). These applications were denied initially on April 16, 2014. (Tr. 122-29). Scott filed a timely request for an administrative hearing, which was held on June 10, 2015, before ALJ Regina Sobrino. (Tr. 32-64). Scott, who was represented by attorney Dennis Little, testified at the hearing, as did vocational expert Stephanie Lorey. (*Id.*). On September 23, 2015, the ALJ issued a written decision finding that Scott is not disabled under the Act. (Tr. 19-28). On October 5, 2016, the Appeals Council denied review. (Tr. 1-5). Scott timely filed for judicial review of the final decision on December 1, 2016. (Doc. #1).

### B. Framework for Disability Determinations

Under the Act, SSI and DIB are available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" as the:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in

the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.

Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. § 404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps …. If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

**C. Background**

*1. Scott's Reports and Testimony*

At the time of the administrative hearing, Scott was 58 years old, and at 6'4" tall, weighed 220 pounds. (Tr. 214, 219). He lived alone in a house. (Tr. 233). He completed high school, as well as specialized training in both truck driving and mechanics. (Tr. 36, 220). Most recently, he worked as a machine operator, but he stopped working when he was discharged for excessive absenteeism/tardiness on November 16, 2012. (Tr. 37, 220-21).

Scott alleges disability primarily as a result of back pain, internal bleeding, high blood pressure, and migraine headaches. (Tr. 38, 219). Specifically, he testified that he has low back pain and headaches every day, as well as bleeding and diarrhea three times a week. (Tr. 45-46). He takes medication for these conditions, which he claims cause headaches, drowsiness, and stomach cramps. (Tr. 43). He testified that he can stand for 10-15 minutes, walk for approximately 5 minutes, and sit for 5-30 minutes at a time. (Tr. 38-39). He further indicated

that he has difficulty using his hands, pushing, lifting, reaching, bending forward from the waist, and climbing stairs. (Tr. 39).

In terms of daily activities, Scott is able to attend to his own personal care, drive short distances, use public transportation, shop in stores, and prepare his own meals, but he gets assistance with certain household chores. (Tr. 40-41, 234-36). He has difficulty sleeping at night due to pain, which causes him to nap two or three times per day. (Tr. 46-47, 234).

2. *Medical Evidence*

The Court has thoroughly reviewed Scott's medical record. In lieu of summarizing his medical history here, the Court will make references and provide citations to the record as necessary in its discussion of the parties' arguments.

3. *Vocational Expert's Testimony*

Stephanie Lorey testified as an independent vocational expert ("VE") at the administrative hearing. (Tr. 51-63). The ALJ asked the VE to imagine a claimant of Scott's age, education, and work experience who can perform medium work, with the following additional limitations: no climbing of ladders, ropes, or scaffolds; and no work around hazards, such as unprotected elevations or near dangerous moving machinery. (Tr. 55-57). The VE testified that the hypothetical individual would be capable of performing Scott's past relevant work as an automotive electrician. (*Id.*). Additionally, the VE testified that the hypothetical individual would be capable of working in the representative positions of linen room attendant, dining room attendant, and box bender. (Tr. 58-59).

D.  **The ALJ's Findings**

At Step One of the five-step sequential analysis, the ALJ found that Scott has not engaged in substantial gainful activity since November 16, 2012 (the alleged onset date). (Tr.

21). At Step Two, the ALJ found that Scott has the severe impairments of low back syndrome and hypertension. (*Id.*). At Step Three, she found that Scott's impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment. (Tr. 22).

The ALJ then found that Scott retains the residual functional capacity ("RFC") to perform medium work, with the following additional limitations: no climbing of ladders, ropes, or scaffolds; and no work around hazards, such as unprotected elevations or near dangerous moving machinery. (*Id.*).

At Step Four, the ALJ determined that Scott is able to perform his past relevant work as an automotive electrician. (Tr. 26). In the alternative, the ALJ concluded at Step Five, based in part on the VE's testimony, that Scott is capable of performing a significant number of jobs that exist in the national economy. (Tr. 27). As a result, the ALJ found that Scott is not disabled under the Act. (Tr. 28).

### E. Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.") (internal quotations omitted). Substantial evidence is "more than a scintilla of evidence but less than a

preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) ("if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion'").

### F. Analysis

As set forth above, the ALJ determined that Scott retains the RFC to perform medium work, with the following additional limitations: no climbing of ladders, ropes, or scaffolds; and no work around hazards, such as unprotected elevations or near dangerous moving machinery. (Tr. 22). Scott argues that this assessment "falls short of including the entirety of [his] documented limitations." (Doc. #14 at 11). The Court disagrees.

To begin with, the ALJ thoroughly considered the objective medical evidence when formulating Scott's RFC. (Tr. 23-26). For example, the ALJ noted that at a July 12, 2012 hypertension follow-up appointment with his primary care physician, Yasir Babiker, M.D., Scott reported dull low back pain. (Tr. 322-26). His physical examination was within normal limits, however, and he was diagnosed with low back pain syndrome and encouraged to exercise and lose weight. (*Id.*). It was nearly eleven months later before Scott again complained to Dr. Babiker of low back pain, reporting in June 2013 that he continued to experience chronic back pain, which Tramadol was "helping somewhat." (Tr. 314-17). On February 25, 2014, Scott again complained of back pain, and while he had some tenderness on examination, his straight leg raising test was negative. (Tr. 444-47).

On April 12, 2014, Scott underwent a consultative examination with Asit Ray, M.D. (Tr. 341-48). Scott reported having been injured at work in 2001 or 2002, saying he had experienced low back pain since that time. (Tr. 341). On examination, he was able to ambulate normally, walk on tiptoes and heels, and squat fully with deep knee and hip bending. (Tr. 342-43). He had normal range of motion of the lumbar spine, no evidence of radiculopathy, and intact sensory testing, and Dr. Ray's impression was history of back pain. (Tr. 343, 347-48). Dr. Ray did not identify any functional restrictions. (Tr. 341-48).

On July 31, 2014, Scott returned to his primary care physician's office, complaining to physician's assistant Charisse Hook of chronic back pain, which had recently worsened. (Tr. 460-63). Hook referred Scott for a pain management consultation and ordered lumbar spine x-rays. (Tr. 462). These x-rays showed only minor arthritic spurring, which was "essentially unchanged from 2009." (Tr. 498). As the ALJ noted, Scott did not return to discuss these results until October 13, 2014, at which time he reported that his back pain was the same, but he was only taking medication when it was "really bothering him." (Tr. 465). Again, he had some tenderness to palpation, but his straight leg raising test was negative. (Tr. 466). He was advised to take Gabapentin more regularly and referred for a neurological consultation. (*Id.*).

On March 30, 2015, after a course of physical therapy, Scott again complained to Hook of back pain, indicating that he had seen a neurologist, who prescribed Lyrica after EMG findings were negative. (Tr. 474). At his next visit to Hook, in April 2015, Scott again complained of back pain and requested that she complete a "Functional Capacity Test" form from his disability lawyer. (Tr. 478). At his next visit, a blood pressure check appointment in June 2014, Scott again requested that this paperwork be completed and was again informed that he would have to "pay out of pocket since this is not a covered benefit from insurance." (Tr. 491).

> After considering all of this evidence in detail, the ALJ summarized it as follows:
>
> > Objective findings regarding the claimant's lumbar spine indicate mild arthritic changes that have been stable since 2009. Treatment records document conservative treatment only, consisting of medications and an uncompleted course of physical therapy. Further, treatment notes document that the claimant was non-compliant with blood pressure and pain medications, even after medications were adjusted due to reported side effects; the primary care source repeatedly encouraged the claimant to take his medications regularly. The claimant testified that pain limits his ability to walk, sit or stand, but he does not use an ambulatory device and all physical examinations include a report of no difficulty standing or

> walking. The consultative physician did not report that the claimant had difficulties functioning during the examination.

(Tr. 25 (citations omitted)). The ALJ also noted that Scott had not consistently sought treatment, and that there were frequent gaps in treatment records and multiple occasions on which Scott did not complain of back pain. (*Id.*). Nevertheless, the ALJ gave Scott the benefit of the doubt in formulating his RFC, indicating that "limited mobility secondary to back pain has been considered in concluding that the claimant cannot engage in more than medium exertion, with the additional restrictions of no climbing of ladders, ropes, or scaffolds; and no work around hazards such as unprotected elevations or near dangerous moving machinery." (Tr. 26).

In the face of all of the medical evidence considered by the ALJ, with respect to his low back pain, Scott alleges only that "medical documentation reveals that he would be unable to perform the physical demands of medium work." (Doc. #14 at 11-12). In support of this argument, Scott cites two pieces of medical evidence: (1) a November 26, 2014 MRI report, which showed mild degenerative changes at L2-L3, L3-L4, and L4-L5, as well as multilevel neural foraminal narrowing; and (2) a February 11, 2015 report noting that Scott had received a trigger point injection, and that an EMG showed L5 root irritation. (*Id.* at 12 (citing Tr. 504-05, 511)). The problem for Scott, however, is that these records were submitted only to the Appeals Council and were not before the ALJ. (Tr. 1-5, 500-11). The Sixth Circuit has held that where the Appeals Council considers new evidence that was not before the ALJ, but nonetheless declines to review the ALJ's decision, the district court cannot consider such evidence when adjudicating the claimant's appeal of the ALJ's decision. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Thus, this Court is precluded from considering these two pieces

of evidence relied on by Scott.[1]

Scott also argues that he was "prejudiced on the merits of his case because there were no manipulative limitations" in the RFC. (Doc. #14 at 12). In support of this argument, Scott relies on a November 13, 2014 report from Flint Neurological Center, diagnosing bilateral carpal tunnel syndrome, with positive Tinel and Phalen signs. (*Id.* (citing Tr. 502)). Again, however, while this evidence was submitted to the Appeals Council, it was not before the ALJ; thus, for the same reasons discussed above, this Court may not consider it. *See Cline*, 96 F.3d at 148.

Moreover, the remaining medical evidence of record does not suggest that the ALJ was required to impose any manipulative limitations in Scott's RFC. Specifically, the consultative examiner, Dr. Ray, found that Scott could make a fist with complete closure, and there was no evidence of atrophy of the intrinsic muscles of Scott's hands on either side. (Tr. 342). Additionally, Scott's grip strength testing using a dynamometer showed 110 pounds on the right hand and 100 pounds on the left hand. (*Id.*). Thus, substantial evidence supports the ALJ's determination not to include manipulative limitations in the RFC.

For all of the above reasons, and upon an independent review of the entire record, the Court concludes that the ALJ's decision is supported by substantial evidence.

---

[1] As the Commissioner noted in her brief, if Scott could have demonstrated that this evidence was new and material, and that good cause existed for not presenting it to the ALJ in the first instance, he could have argued that the case should be remanded for further proceedings pursuant to sentence six of 42 U.S.C. § 405(g). However, Scott did not make this argument in his opening brief, and, even after the Commissioner raised the issue in her brief, Scott did not address it in his reply brief. Thus, not only is any such argument waived, *see Gross v. Comm'r of Soc. Sec.*, 2017 WL 1151099, at *5-6 (E.D. Mich. Mar. 28, 2017), but Scott has provided no information whatsoever from which this Court could find good cause for his failure to present it to the ALJ. Again, the Court simply cannot consider the particular medical records on which Scott bases his argument.

## III. CONCLUSION

For the foregoing reasons, the Court RECOMMENDS that the Commissioner's Motion for Summary Judgment [16] be GRANTED, Scott's Motion for Summary Judgment [14] be DENIED, and the ALJ's decision be AFFIRMED.

Dated: October 2, 2017　　　　　　　　　　　　s/David R. Grand
Ann Arbor, Michigan　　　　　　　　　　　　　DAVID R. GRAND
　　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge

### NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation and Order, any party may serve and file specific written objections to the proposed findings and recommendations and the order set forth above. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## **CERTIFICATE OF SERVICE**

  The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on October 2, 2017.

                s/Eddrey O. Butts
                EDDREY O. BUTTS
                Case Manager